IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No: 3:15-630-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER ON MOTION TO SUPPRESS |
| | ) | |
| BRYAN MARSHALL. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on the Defendant's motion to suppress the evidence seized during a search of a vehicle he was operating on April 22, 2014 in Columbia, South Carolina. The Defendant claims: (1) that probable cause did not exist for the officers to initially arrest him for disorderly conduct because he was merely exercising his First Amendment right to protest the officers' presence at the scene; and (2) that the officers' decision to tow the vehicle he was driving and perform an search of that vehicle violated his rights under the Fourth Amendment. The Court has reviewed the record and the memoranda of counsel and considered the testimony and arguments presented at the motion hearing held on February 23, 2016. For the reasons set forth below, the Court denies the Defendant's motion.

**FACTUAL BACKGROUND**

Most of the following facts appear to be undisputed. On April 22, 2104, at approximately 10:03 p.m., the Columbia Police Department (CPD) 911 operator received two calls reporting "shots fired" in the area of 1808 Tremain Street. The first caller, who

was identified, reported hearing gunshots outside of his home on Tremain Street. He estimated hearing forty shots fired from what sounded like three guns, but stated that he failed to see anything or anyone because he took cover when he heard the shots.

The second caller (Caller #2), who remained anonymous, told the operator what he saw and heard before dialing 911 and also kept the operator informed as to what he was seeing and hearing while he talked to the operator. Caller #2 reported hearing ten to fifteen shots fired in rapid succession coming from the Tremain Street and Barhamville Road area. He also stated that it sounded like two different guns were fired as if people were shooting at each other. He then reported hearing shouting, and that a black or dark blue Dodge Ram pickup truck with rims sped off down Tremain Street towards Barhamville Road.

Caller #2 further stated that he did not believe that the people in the truck were the ones who fired the shots, but he did believe that they were going to retaliate against the shooters. He then described hearing the people in the truck talk about who fired the shots, and further told the operator that they were getting several guns from the trunk to find and confront the shooters. The last bit of information Caller #2 relayed to the operator before ending the conversation was that the driver was parking the truck, two people were getting out of it, and that the police cars had arrived.

Master Patrol Officer James Heywood (Heywood) and Officer Trainee Christon Miller (Miller) were on duty patrolling a nearby area when Dispatch informed them of the shooting. Heywood received reports regarding multiple shots fired in the vicinity of

Tremain Street and Barhamville Road along with information linking a dark colored pickup truck with rims to the incident. Within minutes of receiving this information, Heywood saw the pickup truck on Waites Road. The pickup truck turned left onto Tremain Steet, stopped, and backed up onto the property at 2417 Waites Road.

At that point, two Columbia Police Department (CPD) vehicles stopped at 2417 Waites Road. One CPD vehicle was driven by Heywood, and the other was driven by CPD Officer Mark Juergens (Juergens). Heywood observed the Defendant, who was driving the vehicle, get out of the truck with two or three other people. Heywood concentrated on the Defendant while Officer Miller focused his attention on a group of ten to fifteen people who were coming out of the 2417 Waites Road residence. After the Defendant exited the vehicle, he initially walked towards the 2417 Waites Road residence with the keys to the vehicle still in his hand. Heywood called out to the Defendant and asked if he could speak with him about the report of shots fired in the area, as well as whether the pickup truck was involved.

In response to Heywood addressing him, the Defendant left the area of the house and moved towards Tremain Street where Heywood was standing. As Heywood asked the Defendant questions, the Defendant initially admitted that he was the driver of the truck before becoming uncooperative. Heywood eventually asked the Defendant if he could search the truck, but the Defendant did not answer. It was at this point that the Defendant became loud and boisterous and began shouting profanities at the officers.

These profanities were within hearing distance of the gathering crowd—most of which came from the porch and out of the residence at 2417 Waites Road.[1]

Some of the members of the crowd sided with the Defendant and also began shouting profanities at the officers. As some of the crowd continued shouting and questioning why the police were present at the scene, the officers heard one member of the crowd say that the officers could not search the truck if they did not have the keys to it. As a result, the officers stated that they witnessed the Defendant throw the keys into some bushes near the crowd.[2]

Due to the nature of the 911 calls, the gathering crowd, and Heywood's experience and knowledge of the area, he believed that the Defendant's behavior created a substantial risk of inciting the crowd and endangering the officers and civilians at the scene. Consequently, Heywood arrested the Defendant for Disorderly Conduct pursuant to City of Columbia Ordinance 14-91(1), and placed him in Officer Juergens car. After the Defendant was arrested, the scene became even more unstable. At approximately the same time as the Defendant was being arrested, a K9 officer—Officer C.W. Newman (Newman)—arrived on the scene.

---

[1] During the motion to suppress hearing on February 23, 2016, although the Defendant's witness acknowledged that the Defendant may have shouted profanities at the officers, he disputed the officers' account of how loud the Defendant was shouting them. He testified that the profanities were not within hearing distance of the gathering crowd because the witness' mother was on the front porch, and the Defendant had too much respect for her than to shout profanities loud enough to where she could hear them.

[2] The Defendant's witness claimed that the Defendant threw the keys to him, and he picked them up after they landed at his feet.

The officers discovered eleven 9mm and two .45 caliber casings while investigating the report of shots being fired from a field adjacent the 2417 Waites Road. They also ran the truck's license plate through the Department of Motor Vehicles (DMV) records and discovered that the truck was registered to a woman who was not present at the scene. At that point, Heywood had the truck towed pursuant to law enforcement's community caretaking function, which was permitted by CPD Policy # 7.2, Section 06, Chapter 05 Auxiliary Traffic Services.[3] Because the truck was locked and the crowd at the scene was still unstable, the officers did not inventory the truck prior to towing it to Metro District Headquarters at 2638 Two Notch Road.[4]

Once the truck was at Metro District Headquarters, K9 Officer Newman conducted a free air sniff of the truck using his trained canine, "Rufus." During the sniff, Rufus alerted, which indicated the presence of narcotics in the truck. The officers notified CPD Narcotics investigators of Rufus' alert, and the truck was towed to CPD Headquarters at 1 Justice Square. The next day, April 23, 2014, CPD Narcotics Agent M. J. Harlan obtained a search warrant for the truck. Agents then performed a search of the truck pursuant to the warrant, and found the following items in the truck: (1) five plastic bags containing 558.06 (19.66 ounces) of marijuana; (2) 9.6 grams of hashish; (3) an FNP .45 caliber firearm with one round in the chamber and thirteen rounds in the

---

[3] The officers claim that they towed the truck to ensure the safety of the truck and its contents, as well as to ensure that it did not constitute a nuisance at 2417 Waites Road. The Defendant disputes this claim, and believes that the officers towed the truck for investigatory purposes.

[4] The officers chose not to complete the towing paperwork or conduct a more thorough search of the Defendant until after they got back to Metro District Headquarters because of concerns for their safety.

magazine; (4) a plastic bag containing $2,000; (5) a digital scale; (6) various other plastic bags; and (7) a wallet containing the Defendant's drivers' license along with other items that belonged to him.

The Defendant was charged in state court for Possession of Marijuana and Hashish with Intent to Distribute, Unlawful Carrying of a Pistol, and Possession of Marijuana and Hashish in Proximity to a School. On May 14, 2015, the Defendant pled guilty in General Sessions Court to one count of Possession with Intent to Distribute Marijuana, 2nd offense. The Defendant received a sentence of two years' probation, and the other charges against him were dismissed in exchange for his guilty plea. On September 9, 2015, the Disorderly Conduct charge was nolle prossed by the arresting officer in anticipation of federal prosecution.

On September 15, 2015, the Defendant was indicted in a three count indictment for Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), Possession of a Firearm in Connection with a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g).[5] The Defendant has moved to suppress all of the evidence seized from the truck, claiming that the truck was not in lawful custody of the police during the search. As a result, the Defendant claims that the search was illegal and its fruits should be excluded.

---

[5] The Defendant's possession of the FNP .45 caliber firearm does not constitute a violation of Section 922(g) because it was manufactured in South Carolina.

## DISCUSSION

The Defendant claims that this Court should suppress all of the evidence seized from the Dodge pickup truck as fruits of an illegal search. To support this claim, the Defendant makes two arguments: (1) that officers did not have probable cause to initially arrest him for disorderly conduct because he was merely exercising his First Amendment right to protest the officers' presence at the scene;[6] and (2) the truck was not in lawful custody of the police at the time of the search because the officers' decision to tow the truck was inappropriate. The Government claims that the Defendant's arrest was proper based on probable cause to believe his conduct constituted disorderly conduct under City of Columbia Ordinance 14-91(1). To justify the officers' towing of the truck, the Government relies on law enforcement's community caretaking function, which is permitted by CPD Policy # 7.2, Section 06, Chapter 05 Auxiliary Traffic Services.

### A. Probable Cause for Disorderly Conduct

At the motion hearing on February 23, 2016, Defendant's counsel orally argued that this Court should suppress all of the evidence against the Defendant because the officers did not have probable cause to initially arrest the Defendant for disorderly conduct. Specifically, the Defendant argues that he was merely exercising his First Amendment right to protest the officers' presence at the scene on 2417 Waites Road. The Government argues that the Defendant's loud and boisterous conduct, which

---

[6] Although this argument was not present in the Defendant's motion to suppress, counsel for the Defendant orally made this argument at the motion hearing on February 23, 2016.

included the use of profanities[7] directed towards the officers and caused a potentially hostile crowd to gather at the scene, amounted to more than merely protesting the officers' presence at the scene and instead rose to a level where probable cause existed for officers to arrest the Defendant for disorderly conduct under City of Columbia Ordinance 14-91(1).

A warrantless arrest "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citations omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id. See also Michigan v. DeFillippo*, 443 U.S. 31, 37 (holding that probable cause to justify an arrest "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing, or is about to commit an offense."). A probable cause determination "involves probabilities-judgment calls that are tethered to context and rooted in common sense." *United States v. White*, 549 F.3d 946, 947 (4th Cir. 2008).

---

[7] The Government concedes that profanity and criticism towards officers is afforded limited protection by the First Amendment. *See generally City of Houston v. Hill*, 482 U.S. 451 (1987). In this case, the Government argues that the profanity, accompanied by the Defendant's loud and boisterous conduct, incited a crowd and endangered the officers. Thus, the Government contends that the Defendant's conduct in this case was more than a mere protest, and not protected by the First Amendment.

The Government contends that the officers had probable cause to believe that the Defendant's conduct violated City of Columbia Ordinance 14-91(1). The Court agrees.[8] City of Columbia Ordinance 14-91 provides:

> It shall be unlawful for any person within the city limits to engage in the following conduct, knowing or having reasonable grounds to know that it will tend to promote or provoke a fight, assault or brawl:
>
> (1) To utter, while in the presence of others, any lewd or obscene epithets or make any lewd or obscene gestures with his hands or body;
>
> (2) To use fighting words directed toward another;
>
> (3) To knowingly act and willfully engage in any overt physical conduct that interferes with another's pursuit of a lawful occupation or activity.[9]

Specifically, this ordinance limits disorderly conduct to activities that "will tend to promote or provoke a fight, assault or brawl." Plain words of disagreement, disrespect, and mere profanity are excluded from its reach.

Although there is limited First Amendment protection for criticism and profanity directed towards officers, words and actions that incite violence and create a present danger are not protected. *See City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (holding that the First Amendment does not protect speech "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance,

---

[8] When reviewing probable cause determinations, "deference [to the district court] is appropriate because only district judges have the chance to assess the demeanor and testimony of those persons actually involved with the search. In this regard, the district court is entitled to respect the inferences drawn by officers from their 'own experience in deciding whether probable cause exists.'" *White*, 549 F.3d at 951 (citations omitted).

[9] The Government concedes that there was no probable cause to arrest the Defendant for disorderly conduct under City of Columbia Ordinance 14-91(2) or 14-91(3). As such, this Court does not need to analyze the Defendant's conduct under those Sections.

or unrest."). Speech or conduct that "tend[s] to incite an immediate breach of the peace" is never legally protected. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).

When looking at the Defendant's overall conduct and the circumstances surrounding this case, it is clear that the officers had probable cause to arrest the Defendant for disorderly conduct. When the officers first confronted the Defendant, it was on the heels of a report that multiple gunshots were recently fired in a high crime area. Based on the second 911 call, the officers had reasonable suspicion that the Defendant and other occupants of the truck were preparing to retaliate, which gave rise to the reasonable belief that some of the individuals in that group could have been armed.

As the officers tried to question the Defendant about his potential involvement, he became loud, boisterous, and belligerent. The officers claim that the Defendant kept telling the officers that their questions "were bull s***" as he repeatedly shouted the "F word." As a result, approximately ten to fifteen people formed a crowd in the immediate vicinity where the officers were, and many of the individuals in the crowd began taking the Defendant's side. As some members of the crowd championed the Defendant's side, one individual shouted that the officers could not search the truck if they did not have the keys. The Defendant then threw the keys into the crowd, which had gathered near the officers outside of the 2417 Waites Road residence.

At that point, the officers arrested the Defendant for disorderly conduct in violation of City of Columbia Ordinance 14-91(1).[10]  Considering all of the surrounding circumstances as well as the Defendant's overall conduct, the officers certainly had probable cause to believe that the Defendant had violated the ordinance.  The Defendant was in the presence of others when he became loud and boisterous with the officers.  Further, the language the Defendant used towards the officers qualifies under the "lewd or obscene epithets" language of 14-91(1).  It was reasonable for the officers to believe that the Defendant's conduct in front of the gathering crowd violated the ordinance because the Defendant was inciting a potential immediate breach of the peace.  Therefore, the officers had probable cause to believe that the Defendant violated the ordinance when they chose to arrest him for disorderly conduct.[11]

### B.  Towing the Truck Pursuant to the Community Caretaking Function

A vehicle must be in the lawful custody of the police before a search is authorized. *See United States v. McIlwain*, 2012 WL 5306202, *6-7 (D.S.C. Oct. 12, 2012) (discussing cases requiring lawful custody of a vehicle before a search is authorized). The Defendant argues that the search of the truck violated his Fourth Amendment rights because the police did not have authority to tow the truck.  As such, the fruits of the

---

[10] Although no argument was made regarding the constitutionality of the ordinance in this case, an arrest made in good-faith reliance on an ordinance is valid even if the ordinance is subsequently deemed unconstitutional. *See DeFillippo*, 443 U.S. at 40.

[11] The Defendant also argues that the disorderly conduct arrest was mere pretext for the officers' subjective motivation to arrest him to search the truck.  The Government disputes this claim. However, since this Court has concluded that probable cause existed to arrest the Defendant for disorderly conduct, that issue is irrelevant because the "[s]ubjective intentions [of officers] play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996).

search should be suppressed because the truck was not in the lawful custody of the police at the time of the search. The Government argues that towing and impounding the truck was justified as a valid exercise of law enforcement's community caretaking function[12] because the Defendant did not own the truck, and the owner of the truck or other party responsible for it was not present to take custody of it at the scene.

Relying heavily on the Supreme Court's holding in *Colorado v. Bertine*, the Defendant argues that the officers' choice to tow and impound the Defendant's vehicle was based solely on the desire to investigate suspected criminal activity. *See Colorado v. Bertine*, 479 U.S. 367, 375-76 (1987) (holding that it is improper to tow a vehicle for the sole purpose of investigating suspected criminal activity). Although the Government disputes this assertion, even if this Court took it as accurate, it would not make a difference in this case. The officers' subjective motivations are irrelevant in an ordinary, probable cause Fourth Amendment analysis. *Whren*, 517 U.S. at 813.

The Government argues that regardless of the subjective motivations of the officers, towing and impounding the truck was a valid exercise of law enforcement's community caretaking function. The Court agrees. In *United States v. Rodriguez-Morales*, the First Circuit explained law enforcement's community caretaking role:

> The policeman plays a rather special role in our society; in addition to being an enforcer of the criminal law, he is a "jack of all emergencies," expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing, and provide an infinite variety of services to preserve and protect community safety. Recognition of this multifaceted

---

[12] The community caretaking function is in accordance with CPD's policy regarding towing vehicles.

> role led to the Court's coinage of the "community caretaking" label in *Cady v. Dombrowski*, 413 U.S. 433 (1973) . . .
>
> [T]he police are constantly faced with dynamic situations, no two quite identical, in which they, in the exercise of their community caretaking function, must interact with car and driver to promote public safety . . .
>
> [T]he community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." . . . Thus, as long as such caretaking activities are warranted "either in terms of state law or sound police procedure," they do not offend the fourth amendment.

*United States v. Rodriguez-Morales*, 929 F.2d 780, 784-85 (1st Cir. 1991) (internal citations omitted).

Police may lawfully impound a vehicle after an arrest where the officer reasonably believes that "there was no known individual immediately available to take custody of the car, or [that] the car could have constituted a nuisance in the area in which it was parked." *United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986). The question "is not whether there was a need for the police to impound [the] vehicle but, rather, whether the police officer's decision to impound was reasonable under the circumstances." *Id*. However, the Government's interests in preventing theft, forestalling claims, and protecting the police are not implicated where the owner of the car is present at the time of a defendant's arrest. *See McIlwain*, 2012 WL 5306202, *4 (holding that where a responsible party such as the vehicle's owner is present, an officer does not have a basis for impounding the vehicle).

In this case, after the Defendant was arrested, the officers checked DMV records and learned that the truck the Defendant was driving was not registered to him. According to the DMV records, the owner of the truck lived on Heidt Street and was not present at the scene at 2417 Waites Road. After the officers realized that the owner of the truck was not at the scene, they made the decision to tow the truck back to Metro District Headquarters.

The Defendant argues that although the owner of the vehicle was not at the scene, there was a responsible party present that could have taken custody of the truck. The Defendant further argues that the officers made no inquiry to determine whether such a party was present, so the Government cannot now rely on the argument that there was no responsible party present to take possession of the vehicle after no inquiry was made. However, the Defendant has not shown any authority supporting his position that the officers are required to determine whether there was a responsible party at the scene before towing the truck. Again, the officers may impound a vehicle after an arrest when the officers reasonably believe that there was no individual immediately available to take custody of the vehicle *or* that the vehicle could have constituted a nuisance where it was parked.[13]

"[T]he police do not violate the Fourth Amendment when they impound a vehicle to protect it or to remove a nuisance after arresting the driver away from his home, and he

---

[13] At the motion hearing on February 23, 2016, Heywood testified that one reason the officers towed the truck after discovering that the owner was not present at the scene was because they believed that the truck may have constituted a nuisance at the 2417 Waites Road residence. He further testified that they towed the truck to protect it and its contents due to the aggravated nature of the gathering crowd.

has no means immediately at hand for the safekeeping of the vehicle." *Cabbler v. Superintendent, Virginia State Penitentiary*, 528 F.2d 1142, 1145-46 (4th Cir. 1975) (upholding a police tow of a vehicle parked near the hospital emergency room to protect the car and its contents and to ensure that it was not a nuisance where it was parked); *see also United States v. Cartrette*, 502 Fed. Appx. 311, 316 (4th Cir. 2012) (upholding the police tow of a vehicle from a Wal-Mart parking lot after the occupant was arrested despite his wife and brother being at a restaurant next-door because the officers were not required to stay at the scene until the they came to pick it up).

"The existence of alternative means of dealing with the automobile, even less intrusive means," does not make the officers' decision to impound it illegitimate. *Rodriguez-Morales*, 929 F.2d at 786. There is no requirement that the officers select the least intrusive means of fulfilling their community caretaking responsibilities. *Bertine*, 479 U.S. at 373-74. Again, the main question is whether the officers' decision to tow and impound the truck in this case was reasonable under the circumstances.

At the motion hearing on February 23, 2016, Heywood testified in front of this Court that the truck being a possible nuisance at the 2417 Waites Road residence was one of the main reasons the officers chose to tow it. He also testified that the truck was towed to ensure the safety of it and its contents. Even if this Court assumed that the officers had some investigatory motive for impounding the truck in this case, the analysis would not change. As the First Circuit explained in *Rodriguez-Morales*:

15

> That the impoundment of defendant's vehicle stemmed in part from an investigatory motive does not change either the analysis or the result. As long as impoundment pursuant to the community caretaking function is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives will not invalidate the seizure.

*Rodriguez-Morales*, 929 F.2d at 787.

The Defendant also mentioned that the community caretaking function cited by the Government cites S.C. Code § 56-5-2520, which is the state law governing the towing of vehicles by police. The Defendant seems to contend that this statute, along with law enforcement's community caretaking function, only applies to vehicles found in the roadway as opposed to private driveways. However, absent a clear legislative intent to exclude private driveways from the statute, the Court does not see any reason to analyze this case differently because the truck was parked in the driveway beside the residence rather than on the street in front of the residence.

Based on the above, the truck was in the lawful custody of the officers at the time of the search because the officers' decision to tow the truck pursuant to law enforcement's community caretaking function was reasonable under the circumstances.[14] Consequently, the search did not violate the Defendant's rights under the Fourth Amendment.

---

[14] Since this Court has determined that the truck was in the lawful custody of the officers at the time of the search, there is no issue with the canine sniff at Metro District Headquarters that allowed the officers to obtain a warrant to search the truck. It is well settled that as long as a vehicle is legitimately within the custody of police, a canine sniff of the exterior of the vehicle does not implicate the Fourth Amendment, and such sniffs may be performed without any showing of reasonable suspicion. *See Rodriguez-Morales*, 929 F.3d at 788-89; *see also United States v. Branch*, 537 F.3d 328, 335-36 (4th Cir. 2008). When a canine alerts, as it did in this case, probable cause exists to search the vehicle. *United States v. Jeffus*, 22 F.3d 554, 556-57 (4th Cir. 1994).

## CONCLUSION

Based on the reasons expressed above, the Court finds: (1) that there was probable cause to arrest the Defendant pursuant to City of Columbia Ordinance 14-91(1); and (2) that the towing and subsequent search of the truck that the Defendant was operating did not violate his Fourth Amendment rights. The evidence discovered during this search is admissible.

IT IS SO ORDERED.

March 11, 2016
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

17